The arguments, obviously, to the extent that it's necessary for the context of this argument, that's fine. But everything you said in the other case will apply in this case. Thank you, Your Honor. And I do intend to do that, and in fact, I'm going to sort of pick up and try to change gears, although I will say, for the record, that many of these responses apply to all cases. As I tried to indicate in the earlier case, and in this case it's the same thing. In fact, I have Mr. Gadeska's florist's joint appendix here. I'm going to switch to Mr. Schultz's joint appendix. Many of the issues are exactly the same, just in a different setting. There are some nuances that we'll get into, but that's why whatever we discussed earlier will sort of be considered in this case. But, you know, one of the things that we are discussing is this concern about, well, why don't you tell them everything that, well, we do that. In Mr. Gadeska's florist's case it's at 873, and in Mr. Schultz's case it's at 835. How has your condition has gotten, you know, it's a little more than just tell us how your condition has gotten worse. It actually identifies the types of evidence that are needed, like doctor's reports, lay statements, things like that. And they also invite the individual in for an examination. Under the statute and regulations, examinations are as required, and as both of these individuals experienced and is really the norm with respect to increased ratings claims, examinations are provided to determine how the condition has gotten worse. And, in fact, it was these examinations, it's all part of this duty to assist stuff, that led the VA in these cases to take into account these other aspects of the claim with respect to Mr. Schultz's other potential causes of need, discomfort, and with respect to Mr. Gadeska's florist's other potential. So, again, this sort of supports our view of why the VA constructs its regulations, and why Congress constructed the statute the way it did. There's a reason and a time and a purpose for these things. And when you look at the process as a whole, like in these cases, these veterans were ably served by the process. But what the Veterans Court has done is simply say, now, okay, that's great, but we're going to make this notice requirement, the outset, larger and more claimant-specific. And, frankly, it disrupts the whole administrative process that VA was considering when they were implementing the regulations, or promulgating the regulations, and saying no to the request for specificity at the outset. Because the VA, I mean, as we all know in these rulemaking challenges, the agency is uniquely placed to make these kinds of determinations as to what is the best use for resources, how best to meet the goals of the statute, at the same time to do it in an efficient manner. And that's what they did in the rulemaking implementing the VCA statute. And so what the VCA does, or what the Veterans Court does in this case, is to ignore all of that. There's no discussion in the decision of Chevron. There's no discussion of what the agency's concerns might have been and were articulated, both in the rulemaking and in this Court's decision in Wilson, as to why it might make more sense from a rulemaking perspective to have more generic notice at the outset and then have the claim developed during the assistance stages, and then at the end of the day you have an initial decision. And if that initial decision is suspect in some way, there's a very straightforward process for the veteran claimant to challenge that decision and to add more evidence to the file. And as the Court in Wilson went over in some detail, that process of being able to add more evidence continues and continues and really answers the question raised by Counselor earlier about effective date. I mean, you continue to be able to respond to these little things as they go along. And at the end of the day, if you prevail, even if it takes appeal to this Court and a subsequent remand, you do get that effective date from your earlier claimant. I know you reject, I mean, I know there's, you've made arguments for the basis of our rejecting the committee report, leaving us off, but it seems to me that the argument you've just made is kind of bolstered by statements in the committee report, which I found a little confusing. But at some points on page 82, it says that the committee believes that by notifying the veteran that an examination will be scheduled to evaluate, blah, blah, blah, blah, blah, the duty to notify would be met. It seems to me there's a lot in the committee report that emphasizes, sort of suggests as long as you give a medical exam, that's all that you need, even in connection with the notification, right? See, well, that is the view of the committee report here. I mean, but it is contending, because then they go on to talk about best care, so it's a little, you know, it goes back and forth. The part that I think we really find confusing about the committee report is what seems to be the overarching concern in simplicity. The report begins with notifying that we went to so many VA locations and reviewed about 280-some claim applications, and the one common thread that we took away from that was overly lengthy, overly maybe legalistic, overly complicated notices. And again, that's what we're trying to stress here, is that rather than recognize that what Vasquez-Flores now imposes and what Schultz now imposes is exactly that kind of length and complication that the veteran should not have to deal with at the outset of the process. And that's what we're doing with Vasquez-Flores, is providing him pages and pages of multisyllabic word medical terms, and the veteran is supposed to go through that. So rather than say, how would you remember it as unique? Well, I mean, the committee report also somewhere references that all you need to do is include an appendix to the letter, and in the case of at least Vasquez, I think the appendix would include just the diagnostic codes that are cross-referenced. It doesn't seem to me that that's overly complicated. And that, I think, really is something for the agency to address in the upcoming rulemaking, that they will no doubt, and they no doubt will address it. And I would not be surprised if they come to the same conclusion that they came to at the earlier rulemaking with respect to the complicated nature and administrative burden associated with these claim-specific notices. But for this court, where we're reviewing the statute in 2000 and the regulations are implemented a year later, we have, I think, solid ground upon which to find that the agency had every reason and good reasons to reject the specificity requirement, that this court has addressed those in the general sense, irrespective of the distinction between claims in the PBA, and in the Wilson case, which did involve a claim for service connection, but recognized the scope of what the agency was doing in implementing the VCA as part of the 3.159 regulation. And that was that, I mean, when the court holds that the notice can be generic, it's hard to reconcile a generic notice with a notice that is different. In just these two cases, the notices will be different. How can they be generic and then also contain different types of diagnostic codes? Generic has a meaning that I think we all accept, and that, okay, the person's name is different and maybe the identification of the particular claim is different, but then to require the agency to go and identify specific diagnostic codes, and again, although there's some question about what the veteran's current position is, clearly in the decisions there is a strong suggestion that these potentially related diagnostic codes are also required, which does involve an adjudicated type of activity that has no place at that stage. On your reading of Wilson, how would a generic notice be different for a different type of claim, such as a claim for service connection compared with a claim for increased disability? Well, in this case, the key distinction is the paragraph that addresses the worsening of the condition. In a claim for service connection, there is no service-connected disability, so there is no notice in the claim for service connection about, show us how your condition has gotten worse. Instead, the focus is on what we call the collusive factors, and this Court, I think, has referred to them as well, of an in-service event or injury, present-day disability, and the nexus between the two, and that is the focus for service connection, and that is the focus for the service connection notice. So there is the distinction there between the types of claims that we're talking about, one for service connection and one for an increased rating. But beyond that, then, we do get into the specifics of the evidence of a particular claim, which, it seems to us, clearly crosses that Wilson line and the PBA line, and the agency's own position when they did the rulemaking. And that's where we think the Veterans Court went wrong here, and that's why we're asking this Court. We may have already covered this, so I apologize, but I think Judge Lind earlier on asked a question about why regulations generally just parrot what the statute says, whether the regulations are entitled to shut down veterans. Right, and I think our response was that in this particular case, although the regulation, if you will, parroted the statute, there's agency in the rulemaking itself, the agency explained why, because the question was, why not make the notice more specific? And in the rulemaking, the agency responded as to the administrative rationale behind why it wasn't more specific. So this is a little different than the typical case where you don't have— So where's the Chevron deference? I mean, how do we get Chevron deference? Because that's the agency's interpretation of its regulation, that this Court in Wilson has already found was sufficient by which it could apply the Chevron deference standard. So, and then I have the other. I would like to make one more comment before I take my seat with respect to the daily life thing, Our argument on the daily life thing is that there's no basis in 1155 or the rating schedule for a requirement that the notice seek evidence indicating an effect upon one's daily life, because that's not at all involved in the examination. So that if the notice was silent but that the veteran provided such evidence, the VA then is free to weigh that or reject it as the case may be. But to require the VA in its notice to provide that kind of evidence suggests to the veteran that that evidence might be sufficient to support a claim when it isn't. Because it actually doesn't have anything to do with that. Suppose we agree with you that the definition of disability is an effect of employability and that it would not be necessary to give the veteran notice that he can provide daily life evidence or should provide daily life evidence because that might lead him down the wrong track. But what do we do? This notice suffers the same defect as the previous notice in that your argument was in the brief quite clear that the notice only has to pertain to employability. And if I take you at your word, those sets of briefs say this, this notice doesn't even arguably do that either. So just tell me what do I do in this case if I'm willing to go with you and say, Veterans Court, you did it wrong. Notice should not move daily life, but Mr. Hockey and the government are correct. It pertains only to unemployability or employability. What do I do with the fact that neither of these notices actually give that degree of notice? An answer, which kind of sums it all up, I think, is what is the role of the court in this type of situation? Is it to determine whether or not an action or a regulation is sufficient with the statute? Or is it to try to articulate? So would you get to the vacate then? Is that where you're taking me? Right. The vacate. Since the wrong standard was applied, we would vacate for consideration of these facts under the correct standard. Yes. And that also was pointed out to me in my group that we neglected to, but we would ask, yes, that the court vacate. Well, I would think your answer to Judge Ward would be kind of your answer on the diagnostic codes, which is, yes, ultimately employability is the be-all and end-all in which we evaluate it. But at this threshold level, we think for common sense reasons or whatever, worsening kind of covers that. So I would think you would defend what you did here. Well, I think, I mean, what we're suggesting is not that the court need to say this notice shouldn't. I mean, what we're not suggesting is the court need to say it should only include employability. What we're suggesting is that all that the court needs to do is to say no notice need, the notice does not need to inquire about the day of life. And so I think that fits generally with our position on it. Thank you very much. Thank you. Mr. Fonagher. May it please the court, for the record, I'm appearing on behalf of Michael Schultz. Since obviously you have taken a great deal of time with me, I'm not quite sure where to begin. But let me try to begin first with the question of deference. I think the question of deference here is illusory. I do not believe there is any interpretation that has been made by the VA in its regulation that the regulation does merely inherit the language of the statute. And therefore, there has been no interpretation. And in particular, there's been no interpretation as it relates to the question of notice related to worsening, including the effect on daily life. There has simply been no interpretation by the VA that addresses that issue, either in its discussion in its rulemaking. There is no reference to day to life. There is merely this reference to specificity, which then takes us to the question of the difference between this court's decision in Wilson, and as it applies to a claim for service connection, and this court's decision in this case, as it relates to a notice that involves a different type of claim, a claim that has a different nature. And I don't believe that there is any dispute or that the government has attempted to argue that there is any difference, excuse me, that there does not, in fact, exist a difference between a service connection claim, as in Wilson, and the claim for increase in Mr. Schultz's opinion. Even though Wilson was claimed for service connection and not for increased disability rating, nonetheless, the holding there addressed both. It did. It did. Well, I'm not sure. Well, certainly, I don't know how else you can read that parenthetical at the end, though it necessarily must be tailored to the specific nature of the veteran's claim. That's right. And it's an acknowledgment that there is a difference between the individual and the type of claim that is at issue. And I believe that what this case ends up boiling down to, what this court must focus on, is the meaning of the term information, as it appears in both the statute and the regulation. And that the term information is different and is clearly used by Congress as a separate category from evidence. And that information in the context of Mr. Schultz's case, in particular, is the information about the diagnostic code that's being used to evaluate his case. And that he should have that information up front. That the original notice to him should say, we are evaluating you not under just one diagnostic code, but we're evaluating you under two diagnostic codes. And this is the rating criteria for those. And when we say a worsening, it has to be in relationship to this specific criteria. And that's information that is to be shared. That is information that is necessary to substantiate the claim by obtaining evidence which directs the veteran to support his or her claim. But isn't that information specific to that individual veteran's case? No. The diagnostic codes apply to every veteran. The diagnostic codes- But the particular diagnostic codes that are relevant are specific to this veteran. That's right. And that's the nature of this claim. This claim, as referred to in- Well, the nature of the claim is that it's a claim for increased disability. That's right. The showing must be that there is a worsening or some condition that would affect the rating. But what the court recognized in Vasquez-Flores, and obviously Ms. O'Shultz is either the victim or the beneficiary of Vasquez-Flores in this case. What the court below said in Vasquez-Flores is that these diagnostic codes provide information that is critical to substantiating the claim. And when that information is withheld, you have a necessarily defective notice. And the whole purpose, the congressional intent in providing 5103-a notice is to give the veteran the opportunity to get his or her claim substantiated the first time. So that he or she doesn't need to hire a lawyer so that they can go in all of this colloquy following the notice of disagreement. And a decision review officer and a statement of the case and a substantive appeal and an appearance before the court. And years, sometimes decades, to get resolution. If that information was provided up front, then the veteran would have an opportunity to substantiate the claim. How does that information come up in the context of the processing of the claim? And as Mr. Hoppe alluded to earlier, in the government's duty to assist. That is not my experience. What happens is that a written submission is made, a claim is filed, and then there is an answer back from the VA. This fantasized collegial interaction doesn't take place. The VA goes behind closed doors and makes the decision. Not in all that veteran's friendly. Not in my experience. In several decades of witnessing what is supposed to be the way in which it is described. And it's obviously much easier to describe it that way on the Hill and in this courtroom. But what we're talking about is the first opportunity that the veteran gets after he or she says, I would like more money. I would like more compensation because I think my condition warrants it. I am service connected for this condition. Now, Congress says, you tell that veteran the information that they need. And part of that information they need is, what is the rating criteria? And the rating criteria applies in every single case. And then when it gets complicated, and this is alluded to in Vasquez IV, it's not so much implicated in Schultz, is that you have spinoffs from that applicable diagnostic code. At least in the context of Mr. Schultz's case, the error seems to be much more focused on the fact that there were two different rating criteria and that information was withheld, both that they were using two criteria and what those criteria were. Is it your view that the Veterans Court is saying that the notice requirement must go beyond simply cross-referencing applicable codes and provide even more information? Well, to be perfectly frank, I'm not sure. But what is clear now, and Judge Prost alluded to it with the 2008 legislation, is that that view, in some fashion, has been adopted by Congress. And Congress has now given a direction to the VA to use Vasquez IV as a template for creating new notices in claims for inquiries. But that doesn't help your case here. Indeed, as Mr. Hoppe suggested, the notice suggests that before the statute, such notice was not required. Well, I'm not sure that that's the case, Your Honor, because that goes to the question of what it is that we are interpreting here or what it was about 5103A that the Veterans Court was interpreting. Were they making the same type of interpretation of 5103A that was made in Wilson? And I suggest that they were not, except possibly for that last parenthetical phrase that related to, tailored to, the nature of the claim. And that, if it has some meaning, has meaning when you look at the reality of a claim for increase. Because we know in Part IV of Chapter 38 of the Code of Federal Regulations, there is this extensive section that deals with the rating codes. And you go to those rating codes and you find out what this condition is rateable at, some of which are capped, others of which go all the way up to the maximum limit of 100. But in each of those is the specific criteria for what it takes, from the VA's point of view, to assign an evaluation of 10, 30, 50, whatever the particular rating would be. So if you type in kidney problem, does it pop up just the one diagnostic code, 7508, or does it pop up all of the related codes? Well, it probably won't pop them up if you go to this at Part IV. There is a whole section, and in the kidney section there is a multiple set of listings of different types of kidney conditions that can be rated as the VA has decided. There is a specific regulation in 4.20 that provides for the use of analogous ratings when the rating code doesn't provide. And then, of course, that's when things get especially complicated, because there isn't a code to use. So how on earth would you get an increase in rating if you at least didn't know what the starting code was that the VA relied upon as the analogous code? Don't you have a starting code when there is service connection established? You do, Your Honor. So when a veteran comes in for an increased rating, you start with at least that knowledge of that code, correct? And that presupposes that that information is conveyed to the veteran,  Would it be enough if the VA provided a notice that said, please show us how your condition has worsened and any changes in any applicable codes? No, because I think the information that needs to be conveyed first is, we are evaluating your service-connected disability under this rating code. You can find it in the Code of Federal Regulation at this point, and this is the rating criteria for the rating that we have assigned and the next higher rating and all ratings thereafter. So the veteran doesn't know? I mean, we're only dealing with cases where he's already gotten a disability rating. So he doesn't have access to the information about, well, I think he was awarded this rating of 30% or whatever. He has no clue what number the code is? Absolutely not, Your Honor. But he would have to have been on the medical evidence that was part of this process. Doesn't he have access to all of those medical records? He does have access to those medical records, but those medical records have to be mixed and matched against what the rating code is that was applied. When he gets notice of the initial service-connection determination and a code is assigned, he gets no notice of that? He only gets notified of the original amount? Traditionally, the VA only sends out the rating decision itself and does not send out what is called the code sheet, which is the last page of a rating decision. So what is the rating decision that he gets then? What does it say? You have been deemed service-connected for the residuals of your knee condition. At 30%? At whatever rating. Just so I understand, a technical question here. Is the diagnostic code that would be used by a medical provider different from the rating code that you're describing to me? There is no such thing as the first part. Well, sure there is. For insurance purposes, every insurance company requires diagnostic codes to be identified by doctors treating patients. The VA in psychiatric cases has adopted the DSM for the rating labels, but the diagnostic criteria is independent of the diagnostic labeling system under DSM. There is nothing comparable like you would find in workman's compensation, for instance, where you have that. Can I ask you, your time is dwindling. Can I just ask you to address this point that I've been struggling with how to handle this daily life unemployability thing? Because as I sit here thinking this through, the one thing that strikes me is Mr. Hockey is usually the one telling me I can't look into fact findings, and the Veterans Court has placed me in fact finding that this notice, i.e. gotten worse, was insufficient for the Veterans Court to have demonstrated daily life and unemployability. So I guess I'm having trouble saying, well, because if I'm to accept the level of generality, for example, which I understood him to agree to in response to Judge Frost's questions, if I was to accept his argument that gotten worse is very general and could therefore cover both, then that would be asking me to review the fact finding of the Veterans Court that it doesn't. Right. And that's why I don't think this Court's got any jurisdiction to be hearing this case in the first instance. All that was done was an application of law to the facts of this case. So we shouldn't say Veterans Court, you got it right with regard to the standard, unemployability and daily life is the correct level of notice that must be provided? We shouldn't even go that far? I don't think so, Your Honor, because if they did it, they did it by omission. And I don't believe that that omission is part of the action. Well, they didn't do it by omission. They made a fact finding. They said the notice was insufficient because it didn't demonstrate the linkage of gotten worse to daily life. To daily life, that's right. But they didn't make any analysis relative to the question of unemployability. They didn't look into it. Judge Flores does not look into the type of analysis under 1155 that's been suggested by the VA. So why don't we have jurisdiction? I'm sorry? Why don't we have jurisdiction if they say it's a matter of law, you are required to ask him about his daily life and you can do that? Why can't we evaluate that determination by the Veterans Court? Because I don't believe that they made an interpretation of 5103A when they made that determination in Vasquez-Flores. They simply said that as we examine the notice in this case, I'm talking about Schultz. Now, they did, in fact, in Vasquez-Flores probably go further and probably did make an interpretation. And I'm sorry. I suddenly realized that I was speaking about Schultz and not about Vasquez-Flores. That's my fault. I took you on that road. Okay. I don't believe I have anything else unless there's any further questions. Thank you very much. All right. Thank you. Is there a statutory interpretation question before us in Schultz? The procedure was that we appealed Schultz, which relied upon the interpretation of Vasquez-Flores. So at the time we appealed that, there was some concern as to whether Vasquez-Flores was picked in court in any kind of reasonable time. And so if you look at the two decisions one way, I can understand where the court's question is coming from with respect to Schultz. If you address what we believe is clearly a legal interpretation in Vasquez-Flores and then simply say, oh, by the way, Schultz is wrong because they applied Vasquez-Flores, then you might have a situation where you can say we're going to dismiss Schultz as long as we reach the question in Vasquez-Flores. Although we do note, as we indicated earlier, that aspect of Schultz, which sort of – which because of the nature of the diagnostic was used, does seem to expand upon Vasquez-Flores with respect to the judicatory type behavior. Could you go to this little issue I'm having with – I hate to bring you this little issue, but this daily life unemployability. And the lower court, at least in Vasquez-Flores, at least in one of these cases, made a fact-finding that you failed to satisfy notice. So doesn't that prohibit me from saying, as a factual matter, just saying gotten worse is a level of generality that would necessarily include both of those? Because that was a fact-finding. That part is the part I don't think I can reach. I can reach the legal question of whether you have to do those kind of things. Well, we wouldn't ask the court, and I don't think we're asking the court in our brief to determine – once the court determines in this case that the veteran's court – assuming the court determines in this case that the veteran's court went too far in imposing a requirement in the notice of daily life, all this court need do is say there's no basis in the statute for you to make that interpretation of the statute and regulations that there's a requirement in the notice of daily life, period, vacant. And then there's no question of whether or not Mr. Vasquez-Flores' notice or whether or not Mr. Schultz's notice actually met or did not meet this type of problem. Our concern is that by suggesting that there is a requirement for the notice to address daily life, it is interpreting the statute. And that is something this court can address. And in so doing, to the extent the court says, yes, there's no requirement in these cases for the notice to request information about or evidence about daily life, that's really the end of the matter if you vacate the decision below. I want to just quickly address what I consider to be a little bit of testimony concerning what an award decision says. Our rating decisions, as we understand it, and we'll later address this with a supplemental paper, although they're not involved in this case, ratings decisions typically do identify the diagnostic code. So an individual who's been service-connected knows what his diagnostic code is. Talk about information for a second. Counsel began his discussion with respect to an argument that, well, he was focusing on not so much the evidence but the information, and I just want to draw the court's attention to this point. Information is specifically identified in Regulation 3.159A5 to be non-evidentiary facts, such as claiming the social security number of address, the name and military unit of a person who served with the veteran or the same, and the name and address of the medical care provider. It's not, I think, as broad as counsel was suggesting with respect to his interpretation of information. And frankly, for further support, I would point the court to the Congressional Record of October 17, 2000, in which the comment that the notice would inform the claimant of the information, for example, social security number, these kinds of basic facts, that's what the information is, not information about other potentially related disabilities. And I would just conclude by saying, again, it seems to us that the question that was raised, first by the statute, by Congress, in the comments, by VA in the rulemaking, by this court in the PBA, and by this court in Wilson, and again in today's case, is how can you have a generic notice that requires specific information pertinent to a particular claim? You can't. Thank you.